## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

**MARK ANTHONY THOMAS,**

     **Plaintiff,**

**v.**                        **CASE NO. 2:16-cv-03607**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

     **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court are Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 11) and Defendant's Brief in Support of Defendant's Decision (ECF No.12).

### Background

On January 31, 2013, Mark Anthony Thomas, Claimant, applied for disability and disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI, alleging disability beginning June 1, 2006. The claims were denied initially on June 17, 2013, and upon reconsideration on July 8, 2013. On August 27, 2013, Claimant filed a request for a hearing before an Administrative Law Judge (ALJ). On September 24, 2014, an ALJ presided over a hearing in Charleston, West Virginia. On December 23, 2014, the ALJ issued a decision denying Claimant's application for DIB and granting Claimant's application for SSI beginning on January 31, 2013. On January 8, 2015, Claimant requested review by the Appeals Council (AC) of the denial of his DIB application. On February 18, 2016, the AC denied Claimant's request for review, making the ALJ's decision the final decision of the Commissioner. Claimant filed the instant action seeking judicial review and requesting the remand of the ALJ's decision.

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2016). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education,

2

work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date of June 1, 2006, and meets the insured status requirements of the Social Security Act through September 30, 2010 (Tr. at 14).

DIB

The relevant time frame for Claimant's DIB application is from June 1, 2006, the alleged onset date, through September 30, 2010, the date Claimant was last insured.  Under the second inquiry of the DIB application, the ALJ found that Claimant suffers from the impairments of coronary artery disease with stents and multiple heart attacks and obesity.  However, the ALJ held that claimant did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) his ability to perform basic work-related activities for 12 consecutive months.  Therefore, Claimant did not have a severe impairment or combination of impairments.  (*Id.*)  The ALJ stated that she considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in reaching the conclusion that Claimant did not have an impairment or combination of impairments that significantly limited Claimant's ability to perform basic work activities.

The ALJ held that Claimant's medically determinable impairments could reasonably expect to produce the alleged symptoms; however, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to January 31,

3

2013 (Tr. at 15).   The ALJ's sequential evaluation of Claimant's DIB application ended at step two because the ALJ found that Claimant did not have any severe impairment(s).

SSI

The relevant time frame for Claimant's SSI application begins on January 31, 2013, the date Claimant applied for disability, and continues as long as an impairment is severe and meets or medically equals a Listing.   Regarding Claimant's SSI application, at the second step of the sequential evaluation, the ALJ found that beginning on January 31, 2013, Claimant has had the severe impairments of coronary artery disease with stents and multiple heart attacks, chronic obstructive pulmonary disease, obstructive sleep apnea and obesity.   At the third step of the sequential evaluation, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1. (*Id.*)  The ALJ then found that Claimant has a residual functional capacity (RFC) to perform work at the sedentary exertional level except he can lift and carry ten pounds occasionally and less than ten pounds frequently.   He can stand and walk two hours in an eight-hour workday and sit six hours in an eight-hour workday.   The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds.   The claimant can occasionally bend, stoop, kneel, crouch and crawl.   He can tolerate occasional exposure to extreme cold, extreme heat, vibrations, fumes, odors, dusts, gases, poor ventilation and hazards.   Due to the pain effects of obesity and other facts, the claimant cannot complete a normal workday schedule on a sustained and consistent basis (Tr. at 17-18).   The ALJ found that Claimant is unable to perform any past relevant work (Tr. at 19). The ALJ held "Since January 31, 2013, considering the claimant's age, education, work experience and residual functional capacity, there are no jobs that exist in significant numbers in the national

economy that the claimant can perform" (Tr. at 20).   As a result, the ALJ held that based on

Claimant's SSI application filed on January 31, 2013, Claimant has been disabled under section

1614(a)(3)(A) of the Social Security Act beginning on January 31, 2013 (Tr. at 20).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying

the claim for DIB is supported by substantial evidence.   In *Blalock v. Richardson*, substantial

evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to
> support a particular conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less than a
> preponderance. If there is evidence to justify a refusal to direct a
> verdict were the case before a jury, then there is 'substantial
> evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving

conflicts in the evidence.   *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990).   Nevertheless,

the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize

the record as a whole to determine whether the conclusions reached are rational."   *Oppenheim v.

Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not

supported by substantial evidence.

Claimant's Background

Claimant was born in 1959, therefore, he was an individual approaching advanced age on January 31, 2013.[1] Claimant has a high school education. Claimant completed one year of college.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ's disability onset date finding is not supported by substantial evidence (ECF No. 11). Claimant argues that the ALJ failed to follow the "slight abnormality" standard in finding Claimant's coronary artery disease and obesity were not severe prior to January 31, 2013. (*Id.*) Claimant avers that the ALJ erred in evaluating Claimant's credibility, rendering the ALJ's decision unsupported by substantial evidence. (*Id.*) In response, Defendant asserts that substantial evidence supports the ALJ's finding that Claimant was not under a disability as of his date last insured for DIB (ECF No. 12). Defendant avers that the ALJ followed the controlling regulations in evaluating Claimant's subjective complaints.

Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Weight Afforded Medical Opinions

Social Security Ruling 96-6p provides that findings of fact made by state agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the ALJ and Appeals Council levels of administrative review. ALJs and the Appeals Council may not ignore these opinions and must explain the weight given to these

---

[1] January 31, 2013 is the disability onset date determined by the ALJ.

opinions in their decisions.

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id.*

Social Security Ruling 96-7p confirms that ALJs and the Appeals Council are required to consider findings of fact by state agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms. See 65 Fed. Reg. 11,866 (Mar. 7, 2000). While ALJs and the Appeals Council are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. Id

Further, "[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, non-treating sources, and

other non-examining sources who do not work for us." (*Id.*) Examples of the kinds of factors that an administrative law judge must consider when evaluating the findings of State agency medical and psychological consultants are provided in paragraph (c)2 of §§ 404.1527 and 416.927.

The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

<u>Medical Opinions</u>

The ALJ stated that "Claimant had acute chest pain in June 2006, and November 2007" (Tr. at 15). The ALJ acknowledged that Claimant underwent cardiac catheterization, angioplasty and stent placement after each event. (*Id.*) However, the ALJ did not state what weight, if any, was given to cardiologist Jashvantail Thakkar, M.D. (Tr. at 16).

On April 21, 2008, State agency physician Nilima Bhirud, M.D., conducted a consultative examination of Claimant that reflected Claimant had reported pain in his hips and knees that was made worse by prolonged standing and walking (Tr. at 327). Claimant told Dr. Bhirud that he had "exertional chest pain associated with shortness of breath and diaphoresis that was relieved by nitroglycerin and rest." Claimant reported experiencing shortness of breath. Dr. Bhirud reported that Claimant had a reduced forward flexion of the lumbar spine to 70 degrees and positive straight leg raise testing bilaterally at 70 degrees (Tr. at 328). Dr. Bhirud indicated Claimant had decreased range of motion of the bilateral hips due to obesity (Tr. at 329). The ALJ did not state what weight,

---

[2]  Unless a treating source's opinion is given controlling weight, all of the following factors will be considered in deciding the weight given to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (3) Supportability; (4) Consistency; (5) Specialization; and (6) Other factors.  20 C.F.R. 416.927(c) and 404.1527.

if any, was given to Dr. Bhirud.

On May 28, 2013, State agency non-examining medical consultant Dominic Gaziano, M.D., "considered the medical evidence of record" pertaining to Claimant's DIB application and found that "there was insufficient evidence to evaluate the claimant's impairments prior to the date last insured." Fulvio Franyutti, M.D., performed a second file review on July 1, 2013, and agreed with Dr. Gaziano. The ALJ gave "great weight" to the opinions of Dr. Gaziano and Dr. Franyutti (Tr. at 17). The ALJ held that "there is sufficient evidence to conclude the claimant's coronary artery disease and obesity, productive of an acute cardiac event prior to the date last insured; however, the absence of physical findings subsequently, suggests that the claimant's impairments were not severe in degree for 12 consecutive months." (*Id.*)

The ALJ gave "great weight" to the opinions of Dr. Gaziano and Dr. Franyutti even though both physicians asserted that "there was insufficient evidence to evaluate the claimant's impairments prior to the date last insured" (Tr. at 17).

<u>Claimant's Testimony</u>

Claimant testified that he has experienced three heart attacks (Tr. at 28). He stated that the last one he experienced was in 2007. On the date of the hearing, Claimant testified to standing 6'6" and weight 470 pounds (Tr. at 29). He testified that since 2006 his heart impairment has affected his ability to work, drive a truck and get in and out of the truck. Claimant testified that his cardiologist advised him not to lift over 30 pounds (Tr. at 37). Claimant stated that he experienced his second heart attack due to "pulling [himself] up in the truck." (*Id.*) He testified that his stent collapsed and he had to get a second stent. Claimant testified that he experienced his third heart attack in 2008. Claimant went back to work after his first heart attack for two

9

months before he experienced his second heart attack (Tr. at 38). After his second heart attack he did not go back to work. (*Id.*)

Claimant testified to feeling fatigued. He stated "If I don't make myself stay up I could probably sleep off and on for 20 hours a day probably." He stated that his COPD affects his daily activities. He testified that his COPD affects him "every step" he takes, "even around the house, even taking a shower." (*Id.*) Claimant testified that during a shower he has to step out of the shower to sit down on the toilet and take a break to catch his breath, then return to the shower. Claimant testified to experiencing shortness of breath when walking through the house to go to the restroom (Tr. at 32). Claimant stated that he has to take his inhaler or nebulizer with him. (*Id.*) Claimant testified to using his inhaler at least ten times in a typical day. Claimant testified that sometimes he uses his CPAP machine "just to get [his] breathing under control" (Tr. at 35).

Claimant testified to experiencing pain in his knees "all the time" (Tr. at 33). He stated that walking, getting up and down and lying in bed cause his knees to feel worse (Tr. at 33-34). He testified that he receives shots of Euflexxa in his knees (Tr. at 33). Claimant testified to experiencing knee pain from standing up (Tr. at 36).

<u>Discussion</u>

At step two of the sequential evaluation of Claimant's DIB application, the ALJ held:

> In reaching the conclusion that the claimant did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p (Tr. at 15).

10

Merely stating the requirements of SSR 96-7p were considered does not demonstrate whether the ALJ considered and resolved any inconsistencies in the evidence.

Although the ALJ found that Claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, the ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to January 31, 2013, for the reasons explained in this decision" (Tr. at 15). However, the ALJ did not provide or explain the weight given to Claimant's statements when discussing Claimant's impairments prior to January 31, 2013.   The ALJ's determination at step two of the sequential evaluation pertaining to Claimant's DIB application does not reflect consideration of Claimant's subjective claims of pain and physical limitations due to medical impairments.   Furthermore, the ALJ's credibility determination of Claimant did not provide or discuss the statements considered in finding that Claimant's statements "are not entirely credible prior to January 31, 2013" (Tr. at 15).

Additionally, the ALJ did not specify what weight, if any, was given to treating cardiologist Dr. Jashvantail and consulting physician Dr. Bhirud.  The undersigned suggests that the District Judge find that the ALJ should have discussed the following factors in deciding not to give the opinion of treating cardiologist controlling weight: examining relationship; treatment relationship; supportability; consistency; and specialization pursuant to SSR 96-6p.

## Conclusion

Therefore, the undersigned respectfully recommends the District Judge remand this matter for further consideration and explanation of the objective and subjective evidence considered and

to discuss any inconsistencies.  This Court makes no recommendation as to Claimant's remaining arguments as the issues may be addressed on remand.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 11) to the extent Plaintiff seeks remand pursuant to sentence four of 42 U.S.C. § 405(g), **DENY** the Defendant's Motion for Judgment on the Pleadings (ECF No. 12), **REVERSE** the final decision of the Commissioner, and **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter:  July 21, 2017

Dwane L. Tinsley
United States Magistrate Judge